**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GENA SIMPSON,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. 17-cv-05491-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REVERSING THE DENIAL OF BENEFITS; AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>[Re: ECF 10, 13] |

Plaintiff Gena Simpson appeals a final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff asks the Court to reverse the Commissioner's decision and remand for payment of benefits or, alternatively, to remand for further administrative proceedings. The parties' cross-motions for summary judgment have been fully briefed, and the matter has been submitted without oral argument pursuant to Civil Local Rule 16-5.

For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion, DENIES Defendant's motion, REVERSES the denial of benefits, and REMANDS for further administrative proceedings.

**I.     BACKGROUND**

Plaintiff was born on March 11, 1965. Administrative Record ("AR") 25. She has at least a high school education, she is able to communicate in English, and she has past relevant work as

a pharmacy technician. AR 24-25. Plaintiff claims disability with an amended onset date of January 20, 2012 due to several impairments, including degenerative disc disease of the lumbar spine, osteoarthritis of the left knee with a meniscus tear, rheumatoid arthritis, hypertension, hyperlipidemia, carpal tunnel syndrome in her left hand, obesity, anxiety, and depression. AR 18-19. Her date last insured was December 31, 2014, at which time she was 49 years old, making her a "younger" individual under the Social Security regulations. AR 16, 25.

After her application for benefits was denied initially and upon reconsideration, Plaintiff requested and received a hearing before an administrative law judge ("ALJ"). AR 16. ALJ Brenton L. Rogozen conducted a hearing on February 6, 2017, at which both Plaintiff and a vocational expert ("VE") testified. AR 16, 56-90. The ALJ issued a written decision on April 10, 2017, finding that Plaintiff was not disabled prior to her date last insured and thus was not entitled to benefits. AR 16-26. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. AR 1-4.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*,

807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

### B. Standard for Determining Disability

A claimant seeking DIB under Title II must establish disability on or prior to the date last insured. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995). Determination of the date last insured involves a calculation of the number of quarters the claimant was employed within a certain time frame. *See* 42 U.S.C. § 423.

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

3

## III. DISCUSSION

The ALJ determined that Plaintiff's date last insured was December 31, 2014. AR 16. The ALJ thus properly focused on whether Plaintiff was disabled between her alleged onset date, January 20, 2012, and her date last insured, December 31, 2014. *See Burch*, 400 F.3d at 679 ("Because Burch was only insured for disability benefits through September 30, 1999, she must establish a disability on or prior to that date.").

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date, January 20, 2012, through her date last insured, December 31, 2104. AR 18.

At step two, the ALJ found that Plaintiff had the following severe impairments through her date last insured: "degenerative disc disease of the lumbar spine; and osteoarthritis of the left knee with a meniscus tear." *Id.* The ALJ noted that Plaintiff claimed other medically determinable impairments, including rheumatoid arthritis, hypertension, hyperlipidemia, carpal tunnel syndrome, and obesity, but he concluded that those medically determinable impairments were non-severe through her date last insured. AR 18-19. The ALJ found that Plaintiff's claimed anxiety and depression were not medically determinable based on evidence in the record. AR 19.

At step three, the ALJ concluded that, through her date last insured, Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the regulations. AR 19-20.

Prior to making a step four determination, the ALJ found that Plaintiff had the RFC to perform a reduced range of light work through her date last insured. AR 19. Light work is defined in the regulations as follows:

> Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The ALJ found that Plaintiff could perform these activities through her

4

date last insured with the limitation of only frequent overhead reaching. AR 20, 25.

Based on the above RFC and the testimony of the VE, the ALJ found at step four that Plaintiff was capable of performing her past relevant work as a pharmacy technician, as that work is generally performed, through her date last insured. AR 24. The ALJ made an alternative step five determination, also based on the above RFC and the testimony of the VE, that Plaintiff could perform other jobs that exist in the national economy through her date last insured. AR 24-26. Those jobs included counter clerk, usher, and shipping and receiving weigher. AR 25. The ALJ therefore found that Plaintiff was not disabled from her alleged onset date through her date last insured. AR 26.

Plaintiff challenges the ALJ's step two determination, arguing that the ALJ erred in finding her impairments of rheumatoid arthritis, carpal tunnel syndrome, and obesity to be non-severe. Plaintiff also challenges the ALJ's RFC finding, asserting that the ALJ erred both in disregarding limitations found by her treating physicians without providing specific and legitimate reasons, and in disregarding her testimony regarding her symptoms without providing clear and convincing reasons. Plaintiff argues that those errors resulted in an RFC which is not supported by substantial evidence. Plaintiff argues that because the ALJ's determinations at steps four and five were based on the flawed RFC, those determinations likewise are not supported by substantial evidence. Finally, in her reply brief, Plaintiff states that her application for supplemental security income ("SSI") filed on September 21, 2017 has been approved, and that the approval provides new evidence of disability which supports her request for remand.

**A.  Step Two Determination**

Plaintiff argues that the ALJ erred at step two when he found that her only severe impairments were degenerative disc disease of the lumbar spine and osteoarthritis of the left knee with a meniscus tear. Plaintiff asserts that the ALJ also should have found her claimed impairments of rheumatoid arthritis, carpal tunnel syndrome, and obesity to be non-severe.

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Because step two was decided in Plaintiff's favor, and the ALJ went on to consider steps three through five, Plaintiff could not have been prejudiced

by any error in the ALJ's determination as to which of Plaintiff's claimed impairments were severe. *See id*. at 1049 (where step two was decided in the claimant's favor, "[h]e could not possibly have been prejudiced" and "[a]ny alleged error [was] therefore harmless").

The real thrust of Plaintiff's argument is that the ALJ failed to consider her claimed impairments of rheumatoid arthritis, carpal tunnel syndrome, and obesity when deciding her RFC. The step two determination is "not meant to identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048-49. When determining a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (internal quotation marks and citation omitted). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.*

Consequently, it seems that the most sensible course is to consider Plaintiff's arguments regarding the ALJ's failure to consider all of her impairments in the context of Plaintiff's challenge to the ALJ's RFC determination. The Court notes that the Commissioner adopted this approach as well.

### B. RFC Finding

Plaintiff argues that the ALJ erred in finding that she retained the RFC to perform light work with the only limitation being frequent overhead reaching. More specifically, Plaintiff contends that in making that RFC finding, the ALJ improperly disregarded limitations found by Plaintiff's treating physicians, as well as Plaintiff's testimony regarding her symptoms.

#### 1. Rejection of Treating Physicians' Opinions

The ALJ gave "little weight" to the opinions of Plaintiff's three treating physicians, all of whom found that Plaintiff could perform less than the full range of sedentary work and would miss more than four days of work each month. AR 23. Marc Lieberman, M.D., a rheumatologist, began treating Plaintiff on her alleged onset date, January 20, 2012, and saw her every four months. AR 357-361. Dr. Lieberman completed an Arthritis Residual Functional Questionnaire on December 5, 2015, finding Plaintiff to be disabled due to rheumatoid arthritis and side effects of medications. *Id.* Dale Helman, M.D., a neurologist, began treating Plaintiff in on January 4,

6

2014, and saw her every one to three months. AR 368-371. Dr. Helman completed a Physical Residual Functional Capacity Questionnaire on October 10, 2014, finding her to be disabled due to cervical and lumbar radiculopathy. *Id.* Jon Yoshiyama, M.D., an internal medicine doctor, treated Plaintiff in late 2014 and early 2015. AR 437-509. Dr. Yoshiyama completed a Physical Residual Functional Capacity Questionnaire on October 22, 2014, finding Plaintiff to be disabled due to "RA" – presumably rheumatoid arthritis – with symptoms of pain and inability to concentrate. AR 362-365.

"The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). If the treating physician's opinion is contradicted by the opinion of another physician, the ALJ may reject the treating physician's opinion but only based upon "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160 (internal quotation marks and citation omitted).

The ALJ gave the following reasons for rejecting the opinions of Drs. Lieberman, Helman, and Yoshiyama: (1) they lack substantial support from their own clinical notes; (2) they lack substantial support from the diagnostic imaging reports generated prior to the date last insured; (3) there is no evidence supporting the belief that Plaintiff would require so many absences a month; and (4) they are controverted by the opinions of examining physician Robert Tang, M.D., and reviewing physicians K. Quint, M.D. and J. Frankel, M.D. AR 23-24.

### a. Treating Physicians' Own Clinical Notes

"A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim*, 763 F.3d at 1161. The ALJ cited to Dr. Yoshiyama's treatment notes dated October 22,

2014, November 25, 2014, and January 30, 2015, indicating that Plaintiff was "fully ambulatory," with "no muscle tenderness" and "no acute joint inflammation." AR 440, 446, 451. The conflict between those treatment notes and Dr. Yoshiyama's contemporaneous Physical Residual Functional Capacity Questionnaire completed October 22, 2014, indicating that Plaintiff was in constant pain and could not walk or sit for any length of time, constitutes an adequate reason to discredit Dr. Yoshiyama's opinion.

However, no such contradictions exist in the notes of Drs. Lieberman and Helman. The ALJ pointed to a note dated December 24, 2012, in which Dr. Lieberman stated that Plaintiff was "doing adequately well" on her medication regimen and was in physical therapy. AR 330. The ALJ ignored the portion of the note opining that Plaintiff's impairments of rheumatoid arthritis, osteoarthritis, carpal tunnel syndrome, and torn meniscus were "chronic conditions and unlikely to improve further with medical management." *Id.* The remainder of Dr. Lieberman's notes, which are handwritten, are largely illegible and the Court can perceive no support there to discount his opinion. AR 323-352, 372-389. Dr. Helman's notes, which are legible, document consistent tenderness of the cervical spine, spasms, pain, and decreased range of motion. AR 390-436, 656-702. The ALJ acknowledged that "in virtually every report Dr. Helman opines that the claimant is getting worse," but in the ALJ's view Dr. Helman's examinations "do not bear that out." AR 23. However, an ALJ "is not qualified as a medical expert." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Moreover, to the extent that the notes record some moments in which Plaintiff showed some improvement, "such observations must be read in context of the overall diagnostic picture the provider draws." *Ghanim*, 763 F.3d at 1162 (internal quotation marks and citation omitted). The overall picture drawn by Drs. Lieberman and Helman is of a woman suffering severe limitations which preclude her from performing even sedentary work.

Accordingly, the Court concludes that the treatment notes of Drs. Lieberman and Helman do not comprise substantial evidence supporting the ALJ's rejection of their opinions.

### b. Diagnostic Imaging Reports

Although the ALJ stated that the opinions of Plaintiff's treating physicians lacked substantial support from "the diagnostic imaging reports generated prior to the date last insured,"

1 the ALJ did not specify which reports he found to be in conflict with the treating physicians'

2 opinions. AR 23. Absent citation to particular imaging reports, and an explanation as to why the

3 ALJ perceived those results to be in conflict with the opinions of Drs. Lieberman and Helman, the

4 Court concludes that the ALJ has not identified substantial evidence to reject those opinions. *See*

5 *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a

6 medical opinion or assigns it little weight while . . . criticizing it with boilerplate language that

7 fails to offer a substantive basis for his conclusion.").

### c. Belief that Plaintiff would Require so many Absences

With respect to the opinions of both Dr. Lieberman and Dr. Helman that Plaintiff's limitations would cause her to miss at least four days of work a month, the ALJ stated in conclusory fashion that "there is no evidence supporting their beliefs that the claimant would require so many absences per month, and they provided inadequate justification for any such limitation." AR 24. The ALJ's statement completely ignores the portions of the questionnaires preceding the treating physicians' opinions regarding absences, summarizing Plaintiff's severe symptoms and indicating that Plaintiff would have good days and bad days. *See* AR 357-361, 368-371. Given the context in which the treating physicians offered their opinions regarding the likelihood of excessive absences from work, the ALJ's bald statement that those opinions are unsupported does not provide an adequate basis for rejecting them. "Sheer disbelief is no substitute for substantial evidence." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

### d. Controverting Opinions of Drs. Tang, Quint, and Frankel

As noted above, an ALJ may reject a treating physician's opinion that is controverted by the opinion of another physician, but the ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" for doing so. *Ghanim*, 763 F.3d at 1160 (internal quotation marks and citation omitted). The ALJ stated that the "extreme limitations" found by Drs. Lieberman and Helman were controverted by the opinions of Dr. Tang, an examining physician who found Plaintiff capable of performing medium work with several postural and manipulative limitations, and Drs. Quint and Frankel, reviewing physicians who found Plaintiff capable of performing light work with various exertional and postural limitations. AR 24.

The extent of the ALJ's reliance on the opinions of Drs. Tang, Quint, and Frankel to reject the opinions of Drs. Lieberman and Helman is somewhat muddied by the ALJ's statement that he gave the opinions of Drs. Tang, Quint, and Frankel only "partial weight." AR 23. For example, while accepting the base RFC of light work found by Drs. Quint and Frankel, the ALJ rejected significant exertional and postural limitations to the light RFC found by both of those physicians. AR 22-23. Dr. Quint found that Plaintiff retained the RFC to do light work with only "occasional" climbing, balancing, stooping, kneeling, crouching, and crawling, and "limited" reaching in any direction. AR 101-104. Dr. Frankel found that Plaintiff retained the RFC to do light work with "limited" reaching in any direction. AR 119-121. The ALJ concluded that those limitations conflicted with "the claimant's somewhat normal physical examination results and routine treatment regimen." AR 23. Thus, it appears that the ALJ cherry-picked the base light work RFC found by Drs. Quint and Frankel while rejecting the significant limitations found by them. In doing so, the ALJ erroneously substituted his own opinion regarding the proper interpretation of Plaintiff's medical records in place of the opinions of the two physicians retained by the agency to review those same records. *See Pilgreen v. Berryhill*, No. 17-16535, 2019 WL 121256, at *1 (9th Cir. Jan. 7, 2019) (ALJ "was not free to substitute his own lay opinion" for physician's interpretation of testing results). The Court notes that based on the hypotheticals posed to the VE, the limitation on reaching found by both Drs. Quint and Frankel would preclude a finding that Plaintiff could perform her past relevant work as a pharmacy technician. *See* AR 81-83.

Moreover, the ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinions of Drs. Lieberman and Helman should be credited. Though he found that those opinions were inconsistent with other evidence in the record, *see* 20 C.F.R. § 404.1527(c)(2), the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion as mandated by applicable regulations, *see id.* § 404.1527(c)(2)-(6). "This failure alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676.

In conclusion, the ALJ's rejection of the opinions of Drs. Lieberman and Helman were based on legal error and not supported by substantial evidence in the record.

### 2. Plaintiff's Testimony

Plaintiff contends that the ALJ improperly rejected her testimony regarding her symptoms. Plaintiff testified regarding pain suffered in her knees, back, and hands. AR 59-78. She described the difficulties she has performing household chores and doing grocery shopping. *Id*. She also described her inability to sit for long periods or walk even short distances. *Id*.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Ghanim*, 763 F.3d at 1163 (internal quotation marks and citation omitted). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks and citation omitted). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Id*. (internal quotation marks and citation omitted).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms she described. AR 21. However, the ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. The medical evidence referenced by the ALJ consists in part of diagnostic imaging reports, which the ALJ acknowledged were "suggestive of severe knee and lumbar impairments." AR 22. The ALJ nonetheless rejected Plaintiff's pain testimony because she "largely relied on routine, conservative, and non-emergency treatment through the date last insured." *Id*. The ALJ noted that her left knee disorder deteriorated after her date last insured, and that she underwent total left knee arthroplasty in January 2016. *Id*. However, the ALJ relied on Plaintiff's failure to have such surgery or to treat her knee and lumbar issues more aggressively during the relevant period in discounting her testimony.

Plaintiff is not a doctor. There is no suggestion in the record that Plaintiff refused surgery or other aggressive treatment recommended by her physicians prior to her date last insured. As

11

discussed above, Plaintiff's treating physicians found her to have significant limitations throughout the relevant period. Both Dr. Lieberman and Dr. Helman made express determinations that Plaintiff was not malingering. AR 357-361, 368-371. Against this backdrop, the ALJ's opinion that Plaintiff's failure to pursue more aggressive treatment means that she was not suffering the symptoms she described does not constitute clear and convincing reasons for rejecting Plaintiff's testimony.

### C. Commissioner's Recent Approval of SSI

In her reply brief, Plaintiff states that the Commissioner recently granted her application for SSI, which was filed after her application for DIB which is the subject of the present appeal. Plaintiff argues that under *Luna v. Astrue*, the approval of her SSI application warrants remand of the denial of her DIB application. *See Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010). Because this issue was raised in Plaintiff's reply, it was not addressed in the Commissioner's brief.

In *Luna*, the claimant filed two successive applications for benefits. The first was denied, and the second was granted based on an onset date only one day after the denial of the first application. The district court remanded for further proceedings so that the agency could reconcile the denial of benefits based on Luna's first application with the grant of benefits based on her second application. *Luna*, 623 F.3d at 1034. Luna appealed, arguing that the remand should have been for payment of benefits. *Id*. The Ninth Circuit affirmed the remand for further proceedings. *Id*. at 1035.

It is not clear that *Luna* is on point, because in the present case Plaintiff has not informed the Court how closely in time the disability onset date alleged in the second application followed on the heels of the denial of her first application. However, as discussed below, the Court concludes that remand for further proceedings is warranted based on the ALJ's errors. On remand, Plaintiff certainly may argue the significance of her successful SSI application.

### D. Remand for Further Proceedings is Appropriate

Having concluded that the ALJ committed the errors discussed above, the Court must decide whether the errors are harmless and, if not, the appropriate remedy. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error,

the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494 (internal quotation marks and citations omitted). Here, the errors were not harmless, because they were key to the RFC finding upon which the ALJ based his denial of benefits at steps four and five. Moreover, the Court cannot discern the agency's path absent appropriate consideration of all relevant evidence of record. The Court therefore must determine the appropriate remedy.

A remand for an immediate award of benefits may be appropriate in the "rare circumstances" in which the following three requirements are met: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter*, 806 F.3d at 495 (internal quotation marks and citation omitted). Even if all three requirements are satisfied, the Court "retain[s] flexibility in determining the appropriate remedy." *Id.* (internal quotation marks and citation omitted).

The Court concludes that a remand for further proceedings is appropriate here. The first factor clearly is met, as the ALJ failed to provide legally sufficient reasons for failing to credit the opinions of Drs. Lieberman and Helman and for failing to credit Plaintiff's testimony. The third factor likewise is met, as the ALJ would be required to find Plaintiff disabled on remand if the opinions of Drs. Lieberman and Helman were credited as true. However, the second factor is not met. In the Court's view, further proceedings are necessary so that all of the medical evidence, Plaintiff's testimony, and the new evidence regarding Plaintiff's successful SSI application may be evaluated under the applicable legal standards.

Accordingly, the Court will grant in part and deny in part Plaintiff's motion for summary judgment and will deny Defendant's cross-motion for summary judgment. Pursuant to sentence four of 42 U.S.C. § 405(g), the Court will reverse the denial of benefits and remand for further administrative proceedings consistent with this order.

//

//

**IV. ORDER**

    (1)    Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

    (2)    Defendant's motion for summary judgment is DENIED;

    (3)    The denial of benefits is REVERSED; and

    (4)    The matter is REMANDED to the Commissioner for further proceedings consistent with this order.

Dated: March 1, 2019

BETH LABSON FREEMAN
United States District Judge